# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JAMIE-DENISE TYLER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>    Defendant. | CIVIL ACTION FILE NO.:<br><br>**Complaint – Class Action** |

## CLASS ACTION COMPLAINT

Plaintiff Jamie-Denise Tyler ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Mid-Century Insurance Company ("Mid-Century" or "Defendant"), and in support thereof states the following:

## NATURE OF THE CASE

1.  This is a Georgia class action lawsuit by Plaintiff, individually, and on behalf of a putative class of persons, who were insureds under Defendant's private passenger auto ("PPA") insurance policy, who submitted covered first-party total loss auto claims, and who were not paid the full motor vehicle title ad valorem tax

1

("TAVT") (which replaced Georgia's mandatory auto sales tax in 2013) due under the policy.

2.  The Defendant's PPA insurance policy (the "Policy") insuring Plaintiff and all putative class members ("Class Members") has identical material language relating to coverage provided for first-party total loss claims. A copy of the Policy containing the materially identical language covering Plaintiff and each Class Member is attached hereto as Exhibit A.

3.  The Policy incorporates Georgia law and require Defendant to pay "actual cash value" on total loss claims. Exhibit A at 19. Plaintiff brings this claim for breach of contract because Defendant failed to pay Plaintiff and Class Members the mandatory TAVT on their total loss claims.

4.  Georgia law expressly requires PPA insurers, like Defendant, who pay total loss claims based on actual cash value to pay applicable taxes and fees based on the total loss vehicle:

> The insurer may elect to pay a cash equivalent settlement based upon the actual cost less any deductible provided in the policy, to purchase a comparable automobile by the same manufacturer, same model year, with similar body style, similar options, and mileage, including all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile. The amount payable on taxes, license fees, and transfer fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement.

Ga. Comp. R. & Regs. R. 120-2-52-.06,

5.      "All applicable taxes, license fees and other fees incident to the transfer of ownership" include the Georgia TAVT.

6.      Georgia law sets the specific method to determine TAVT on motor vehicles. The TAVT at the time of Plaintiff's loss was 7% of the value of the vehicle set by the 2019 Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax ("2019 TAVT Manual"). Plaintiff's total loss vehicle was valued at 5,650.00 by the TAVT Manual. As such, the TAVT due on Plaintiff's claim was $395.50 (.07 x $5,650.00).

7.      Defendant breached its clear policy promise with Plaintiff and violated Georgia law by failing to pay all the TAVT due on Plaintiff's total loss claim. Defendant paid only $342.72 in TAVT on Plaintiff's total loss claim. Defendant's underpayment was caused by its failure to follow Georgia law and calculate the TAVT based on the TAVT Manual. Rather than determine TAVT based on the TAVT Manual, Defendant applied the 7% TAVT rate to the value placed on the total loss vehicle by Defendant's market valuation vendor.

8.      The material facts in this case are not in dispute. Plaintiff does not dispute the value of the total loss vehicle as determined by Defendant (and its vendor) when determining the vehicle value component of total loss claims. There also does not appear to be a dispute as to whether the Policy and Georgia law require

payment of TAVT – because Defendant paid TAVT – but in an incorrect lesser amount.

9. The only issue before the Court is whether Defendant was required to pay TAVT based on the TAVT requirements of Georgia law, or whether Defendant could apply the TAVT rate of 7% to its valuation vendor's determination of vehicle value (which is a method not permitted by Georgia law). The method of determining TAVT under Georgia law results in a TAVT of $395.50, whereas the different (outside Georgia requirements) method utilized by Defendant resulted in a lower TAVT of $342.72. Plaintiff was harmed in the amount of $52.78 plus interest due to Defendant's underpayment of TAVT.

## THE PARTIES

10. Plaintiff is and was domiciled in DeKalb County, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

11. Defendant Mid-Century is authorized to and engage in the sale of Property & Casualty Insurance in Georgia. Defendant is a California for-profit insurance company with its principal place of business located at 6301 Owensmouth Avenue, Woodland Hill, California.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class, which consists of

at least 100 members; (b) Plaintiff is a Georgia citizen; (c) Defendant is a California citizen; and (d) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

13. Plaintiff alleges that the amount in controversy exceeds $5 million exclusive of interests and costs over the six-year putative class period based on the over $600 million of direct PPA premium written by Defendant in Georgia in a one-year period.

14. Venue is proper in this Court because Defendant is subject to personal jurisdiction in this district and division.

## STATEMENT OF FACTS

15. Defendant's Policy covered each Plaintiff and Class Member and was based on standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims. These terms are set forth in the "form" policy attached hereto as Exhibit A.

**I. During the Period of Plaintiff's Total Loss, Georgia Imposed a Title Ad Valorem Tax for Used Cars Based on the Value Set forth in the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax.**

17. On March 1, 2013, Georgia eliminated sales tax on motor vehicle purchases and replaced the sales tax with a title ad valorem tax ("TAVT").

> (b)(1)(A) Except as otherwise provided in this subsection, any motor vehicle for which a title is issued in this state on or after March 1, 2013, shall be exempt from sales and use taxes to the extent provided under paragraph (95) of Code Section 48-8-3 and shall not be subject to the

ad valorem tax as otherwise required under Chapter 5 of this title. Any such motor vehicle shall be titled as otherwise required under Title 40 but shall be subject to a state title fee and a local title fee which shall be alternative ad valorem taxes as authorized by Article VII, Section I, Paragraph III(b)(3) of the Georgia Constitution.

O.C.G.A. § 48-5C-1(b)(1)(A).

18. For the period March 1, 2013 through December 31, 2019, TAVT was determined by applying the TAVT percentage rate to the fair market value of the vehicle set as of the day of purchase by the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax.[1] O.C.G.A. § 48-5C-1(a)(1)(A) (versions for the period 3/1/13 through 12/31/19). The applicable Georgia Motor Vehicle Assessment Manuals for the class period are at https://dor.georgia.gov/georgia-motor-vehicle-assessment-manual-title-ad-valorem-tax (last visited 10/15/21). The fair market value of the total loss vehicle for purposes of TAVT is not subject to appraisal because it is a set amount determined by the manual that only relates to the TAVT due on the claim.

19. The percentage TAVT to be applied to the assessment value for the following time periods was:

---

[1] Plaintiff's vehicle is listed in the TAVT Manual. For vehicles not listed in the Assessment Manual, the fair market value for purposes of determining TAVT was set as the "value from the bill of sale or the value from a reputable used car market guide designated by the commissioner, whichever is greater, and, in the case of a used car dealer, less any reduction for the trade-in value of another motor vehicle." O.C.G.A. § 48-5C-1(a)(1)(B) (versions for the period 3/1/13 through 12/31/19). A taxpayer can submit a written application with supporting documentation to "deviate from the fair market value in the Assessment Manual based upon mileage and condition of the used vehicle." O.C.G.A. § 48-5C-1(a)(1)(C) (versions for the period 3/1/13 through 12/31/19).

| Time Period | TAVT % |
|---|---|
| 3/1/13 – 12/31/2013: | 6.50% |
| 1/1/14 – 12/31/2014: | 6.75% |
| 1/1/15 – 12/31/2019: | 7.00% |
| 1/1/20 – present: | 6.60% |

O.C.G.A. § 48-5C-1(b)(1)(A) (all prior versions).

20. The total loss vehicles for Plaintiff and the great majority of class members are listed in the TAVT Manuals. The minimum TAVT due on the vehicle is thus easy to identify: (1) find the vehicle value listed in the TAVT Manual; (2) apply the percentage TAVT to the value.

## II. Defendant Breached its Policy with Plaintiff by Failing to Pay the TAVT due on Her Total Loss Claim.

21. Plaintiff entered a Georgia PPA policy agreement to be insured by Defendant under terms contained in the "form" policy attached as Exhibit A.

22. The Policy provided physical damage coverage for Plaintiff's 2011 Hyundai Sonata, VIN 5NPEB4AC6BH251188 ("Plaintiff's Vehicle" or "Total Loss Vehicle"). Ex. B, "Policy Declarations."

23. On or about March 31, 2019, Plaintiff was involved in an auto collision while operating Plaintiff's Vehicle. Plaintiff filed a claim with Defendant for Plaintiff's Vehicle's physical damage caused by the collision, claim number 3012600656-1-2.

24. Defendant determined that Plaintiff's Vehicle was a total loss and that the claim was a covered claim. Ex. C, "Settlement Explanation".

25. Defendant, through its vehicle valuation provider believed to be CCC Information Services, Inc., determined Plaintiff's Vehicle had a base value of $4,939.00, with a $101.00 negative condition adjustment and a $58.00 positive refurbishment adjustment, for a total value of $4,896.00, for purposes of identifying the vehicle value component of the total loss claim. Exhibit D, "CCC Market Valuation Report." Plaintiff does not dispute Defendant's vehicle valuation for purposes of paying the vehicle value component of the total loss claim.

26. Defendant added $38.00 for fees and $342.72 for TAVT, and subtracted the deductible of $1,000.00. Defendant made a final payment on the claim of $4,276.72. Ex. C at 1.

27. Defendant breached the Policy and Georgia law (expressly incorporated into the Policy) by failing to pay the full $395.50 for TAVT owed on Plaintiff's Vehicle. The TAVT on Plaintiff's Vehicle was 7% of the Plaintiff's vehicle value as set out in the 2019TAVT Manual, which valued Plaintiff's Vehicle at $5,650.00 for purposes of TAVT. As such, the TAVT due on Plaintiff's claim was $395.50 (.07 x $5,650.00).

28. Plaintiff was damaged by Defendant's breach.

**III. Defendant Breached its Policy with All Class Members by Failing to Pay the Mandatory Replacement Costs on Their Total Loss Claims.**

29. Each Class Member was insured by Defendant for a total loss under the same material terms as the Policy insuring Plaintiff.

30. Like Plaintiff, each Class Member submitted a claim to Defendant during the class period, which Defendant determined was a covered total loss.

31. Defendant breached its insurance policy with each Class Member by failing to pay all the TAVT on the Class Member's total loss claim.

32. All Class Members satisfied all terms of the Policy and all conditions precedent, such that their insurance policies were in effect and operational at the time of the collisions, and their total loss claims were deemed covered claims by Defendant.

### IV. The Policy Required Defendant to Pay Actual Cash Value, Including Mandatory Replacement Costs TAVT, Title Transfer Fees, And License Plate Transfer Fees on All Total Loss Claims.

33. The Policy required Defendant to pay "actual cash value" ("ACV") on first-party total loss claims.

34. The Policy does not exclude from coverage the mandatory TAVT, title transfer fees, and/or license plate transfer fees.

35. The Policy provides as follows relating to PPA physical damage comprehensive coverage in that Defendant "will pay a for a loss to your insured car…caused by any…accidental collision, less any applicable deductibles." Ex. A at

15 - **Part IV(A)(1)-(2) INSURING AGREEMENT – Collision/Comprehensive Coverage** (emphasis added).

36. The Policy also includes a "**Payment of Loss**" provision as follows:

**Payment of Loss**
1. *We will pay the loss in money, or repair or replace damaged or stolen property*.
   a. We may, at any time before the loss is paid or the property is replaced, return, at our expense, any stolen property either to you or to the address shown on the Declarations Page with payment for the resulting damage.
   b. We may keep all or part of the property at the agreed or appraised value.
   c. *If we pay for loss in money, our payment will include, where required by law, the applicable sales tax and fees for the damaged or stolen property.*
2. We may settle any loss with you, the owner, or the lien holder of the property shown on the Declarations Page.

*Id.* at 19 – **Part IV(F)(1)(a)-(c)**(emphasis added).

37. In the same section, under a provision entitled "LIMITS OF LIABILITY," which states, in pertinent part:

**LIMITS OF LIABILITY**
1. Our limits of liability for an insured loss to your insured car, non-owned car or its equipment will not exceed the cost that is necessary to repair or replace the damaged or stolen property or parts with like kind and quality parts less an adjustment for physical deterioration and depreciation. The limits are also subject to all other adjustments set forth in this section.
2. The cost to repair or replace will be calculated based on the lowest of:
   a. *The Actual Cash Value* of the stolen or damaged property at the to me of the loss, reduced by the applicable deductible; or;

10

       b. The amount necessary to repair or replace the stolen or damaged property, reduced by the applicable deductible.

*Id.* at 19 (emphasis added).

38. The Policy defines "Actual Cash Value" as "the fair and reasonable cash price for which property can be repaired or replaced in the marketplace at the time of loss. The price includes an allowance for depreciation, physical deterioration, and obsolescence." Ex. A at 16 - **Part IV(B)(1) – Additional Definitions**.

39. The Policy incorporate the mandates of Georgia law:

**TERMS CONFORMED TO STATUTES – Part V(B)(10)**

    (a) This policy shall be deemed amended to conform to the statutes of the state listed in your application if any provision fails to conform to such statutes. Any dispute as to coverages or the provisions of this policy shall be determined and governed by the law of the state listed in your application as your residence.

    (b) Policy terms, which conflict with the laws of the state in which this policy issued, are hereby amended to conform to such laws.

*Id.* at 23-24.

40. The Policy imposes no condition that an insured replace a total loss vehicle to receive full coverage under the Policy.

41. The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is leased, owned, or financed.

11

42. The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is actually replaced after the total loss.

## V. Georgia Law Required Defendant to Pay TAVT, Title Transfer Fees, and License Plate Transfer Fees Under the Policy.

43. Georgia State Rules and Regulations, Rule 120-2-52-.06, Total Loss Vehicle Claims, is promulgated by the Georgia Commissioner of Insurance pursuant to the authority set forth in O.C.G.A. §§ 33-2-9 and 33-34-8. Rule 120-2-52-.06 requires that when insurers pay for total losses in money (rather than actually providing a replacement vehicle), the insurers must include in such payments "all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile. The amount payable on taxes, license fees, and transfer fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement."

44. This requirement set out in the Georgia Rule is expressly incorporated into the terms of the Policy. Exhibit A at 23-24.

45. TAVT, title transfer fees, and license plate transfer fees are taxes and fees incident to transfer of ownership and should have been paid by Defendant under the Policy and Georgia law.

## VI. TAVT is a Tax Incident to the Transfer of Ownership and Mandated by Georgia Law.

46. Throughout the class period, Georgia law imposed a mandatory TAVT of between 6.6 and 7.00 percent based on the fair market value of the vehicle on any purchase, transfer, or lease of a private passenger vehicle. O.C.G.A. § 48-5C-1(b)(1)(A).

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

48. Plaintiff asserts claims for breach of contract on behalf of a class (hereafter the "Class") defined as follows:

> All insureds, under any Georgia policy issued by Defendant who submitted a covered first-party physical damage claim, whose claim was adjusted as a total loss, and who received a total loss payment from Defendant that did not include all the TAVT due under the policy and Georgia law, between March 1, 2013 and December 31, 2019.

49. Excluded from the Class are all officers and employees of Defendant and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

**Fed. R. Civ. P. 23(a).**

50. **Numerosity.** Class members are believed to exceed 10,000 and are so numerous and geographically dispersed throughout Georgia that separate joinder of each is impracticable.

51. **Ascertainability.** The Class Members are ascertainable and readily identifiable from Defendant's information and data.

52. **Commonality.** Common questions of law and fact predominate, which are susceptible to common answers:

    a. Whether the Policy requires Defendant to pay TAVT on first-party total loss claims, and how much; and

    b. Whether Defendant breached the Policy by failing to pay TAVT.

53. **Typicality.** Plaintiff's claims and defenses are typical of the claims of all Class Members. Defendant injured Plaintiff and Class Members through uniform misconduct and Plaintiff's legal claims arise from the same core practices—Defendant's failure to pay full TAVT on first-party total loss claims under PPA Georgia physical damage policies with the same material total loss coverage provisions. Plaintiff suffered the same harm as all Class Members: damages for unpaid TAVT under the Policy.

54. **Adequacy.** Plaintiff is an adequate class representative because her interests do not conflict with Class Members' interests, and she will fairly and

adequately protect those interests. Plaintiff's counsel are experienced in litigating consumer class actions and complex litigation. Plaintiff's counsel have specific experience successfully litigating similar disputes as class counsel.

## Fed. R. Civ. P. 23(b)(3).

55. Plaintiff's claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(3).

56. Questions of law and fact, including the common questions identified above, predominate over any questions only affecting individual Class Members.

57. A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Class Members' individual damages, while meaningful, are too small to prosecute individually. Given the relatively small damages individually suffered, individual Class Members appear to have little interest in controlling the prosecution of this matter in separate actions. Thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff's counsel are unaware of likely difficulties in managing this class action.

58. It is desirable to concentrate the litigation of these claims in this forum because the class action involves Georgia claims under Georgia law, the great

majority of Class Members reside in Georgia, many Class Members reside in this district and division, and substantial evidence relating to this class action is located in this district and division.

59. Plaintiff is unaware of other pending litigation on behalf of Class Members involving these Georgia claims against Defendant.

## COUNT I
## BREACH OF CONTRACT

60. The allegations in all prior paragraphs are incorporated here by reference.

61. Plaintiff and all Class Members were covered insureds under a policy with Defendant and complied with all Policy terms relating to their total loss claims.

62. Each Plaintiff and Class Member made a claim under their Policy that Defendant determined to be a first-party total loss covered claim.

63. The Policy and Georgia law imposed a duty on Defendant that it pay Plaintiff and all Class Members TAVT because TAVT is a mandatory replacement cost for total loss insured vehicles and is incident to the transfer of ownership of a comparable automobile.

64. Defendant failed to pay Plaintiff and all Class Members all the TAVT that were due under the Policy.

65. Defendant's failure to provide coverage, and to pay Plaintiff and Class Members all the TAVT required by Georgia law breached Defendant's Policy and Georgia law.

66. As a result of Defendant's breaches, Plaintiff and Class Members have suffered damages and are entitled, under their Policy, to sums representing all unpaid TAVT, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

67. Plaintiff does not dispute the base values determined by Defendant for total loss vehicles for purposes of identifying the vehicle value component of the total loss claim. This case only presents disputes as to insurance coverage: is TAVT required to be paid under the Policy on first-party total loss claims, and if so, how is TAVT required to be calculated.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seek judgment as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff as class representative;

b) For an award of compensatory damages in amounts owed under the Policy and Georgia law;

c) For all other damages according to proof;

d)	For costs of suit incurred herein;

e)	For prejudgment and post judgment interests on any amounts awarded; and

f)	For such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

This 1st day of November 2021,

>	/s/ Andrew J. Shamis
>	Andrew J. Shamis
>	Georgia Bar No. 494196
>	SHAMIS & GENTILE, P.A.
>	14 NE 1st Ave., Suite 705
>	Miami, FL 33132
>	Telephone: (305) 479-2299
>	Facsimile (786) 623-0915
>	ashamis@shamisgentile.com
>
>	Christopher B. Hall
>	Georgia Bar No. 318380
>	HALL & LAMPROS, LLP
>	400 Galleria Parkway, Suite 1150
>	Atlanta, GA 30339
>	Telephone: (404) 876-8100
>	chall@hallandlampros.com
>
>	Scott Edelsberg, Esq. (appearing pro hac vice)
>	EDELSBERG LAW, PA
>	20900 NE 30th Ave., Suite 417
>	Aventura, FL 33180
>	Telephone: (305) 975-3320
>	scott@edelsberglaw.com
>
>	*Attorneys for Plaintiff*